**LOUISVILLE CYCLE & SUPPLY COMPANY, INC., Movant,**

v.

**Jack E. BAACH, Individually, et al., Respondents.**

Supreme Court of Kentucky.

March 9, 1976.

Rehearing Denied May 4, 1976.

Stuart E. Lampe, David C. Fannin, Wyatt, Grafton & Sloss, Louisville, for movant-appellant.

Leslie D. Aberson, Louisville, for respondent-appellee.

PER CURIAM.

This matter is before us on a CR 65.07 motion for a temporary injunction. It is being made the subject of an opinion because the chancellor's reason for denying relief in the trial court goes to the merits of the controversy.

The suit is on a written contract in which the defendant, Baach, agreed "that while he is in the employ of the Company [plaintiff], whether under this contract or any renewal thereof, or under a new contract or substitute contract, and for a period of eighteen months after leaving the service of the Company," he would not do business in competition with the plaintiff in the same territory covered by him during his employment with the plaintiff.

The contract was drafted over a period of about two months from March 28 to May 14, 1968, and apparently was signed shortly after the latter date. By its terms the Company employed Baach "for a period effective as of March 11th, 1968 and terminating September 1st, 1969, to operate a

division of the Company for the sale of advertising specialties, business gifts, novelties and incentive programs," etc. It provided that upon its expiration on September 1, 1969, "said Agreement may be renewed or extended by mutual agreement of the parties for one year or for longer periods thereafter, by simple endorsement added thereto." Baach was to receive an annual salary of $12,500 plus 25% of the net profits in excess of $12,500 from the operation of the advertising specialties division, of which division "the said Baach is in charge," etc.

The contract was not formally renewed or extended on September 1, 1969, but Baach continued in the Company's employment and occupied the same position and relationship until July of 1975, when he left the Company and went into business for himself in competition with it, thus precipitating this lawsuit. At some time during this interim, however, Baach had become dissatisfied with the compensation arrangement, and by mutual agreement it was changed from a salary plus 25% of net profits to a salary plus 2½% of gross sales. With particular reference to the interim between September 1, 1969, and July of 1975 Baach testified as follows:

Q. "Now, is there any question—you heard Mr. Lipski testify that you were continuously employed there up until the first of July of this year?

A. "I was employed as of—I don't know the exact specified date in September. As far as I was concerned it was on a contingent day to day basis, I had no contractual arrangement.

Q. "Mr. Baach, Louisville Cycle did agree to pay you a salary after that September date that you have talked about?

A. "Yes, I received a salary.

Q. "You did agree to continue to work? As a matter of fact you did go on doing the work?

A. "Yes, I continued to work, but not under any contract.

Q. "You had an oral agreement with Mr. Lipski that you would go on and sell articles for him, didn't you?

A. "There was no oral agreement at all. I continued to work, but there was no oral agreement ever made.

Q. "What happened, Mr. Baach, when you asked for a raise in compensation?

A. "At which time?

Q. "Tell me all the times.

A. "Many too numerous to elaborate, sir.

Q. "How many times were you successful? Let's put it that way.

A. "I think once, to my knowledge, sir.

Q. "Mr. Lipski explained that; he raised your salary some, and agreed to give you one and a half percent of gross sales?

A. "Yes.

Q. "He agreed to do that?

A. "Sir?

Q. "He agreed to do that?

A. "Yes, sir.

Q. "And you agreed to accept it, didn't you?

A. "I agreed to accept it.

Q. "And you went on working under those terms?

A. "Yes, sir, I was paid."

■ Generally speaking, "it is well settled that if an employee's covenant not to engage in competition with his employer or former employer . . . is valid and reasonable, equity will assume jurisdiction to enjoin its breach by the employee." 42 Am.Jur.2d, *Injunctions*, § 115; *Crowell v. Woodruff*, Ky., 245 S.W.2d 447, 449 (1952).

Three volumes of testimony and numerous exhibits were introduced in connection with the Company's motion for a temporary injunction. They disclose, essentially, that in 1968 Baach was sole proprietor of a business enterprise different from and much smaller than that in which the Company was engaged. He and the principal owner of the Company were friends. They decided that it would be to their mutual advantage to combine the enterprises. The result was that on or about March 11, 1968,

Baach's business was merged with that of the Company and Baach became an employe of the Company in charge of the phase of its operations that had formerly been his own independent business. The details of their business arrangement were finalized and formalized by the written contract of May, 1968. In 1975 Baach decided to get out and resume his independent enterprise, competing with the Company and seeking to take from it as many as possible of the customers whose accounts he had served while in the Company's employment. Some of the personnel he had had under his supervision during that employment also left the Company and went with him, thus necessitating the Company's securing new employes in order to continue in the phase of its business that had been brought to it by Baach in 1968.

There is nothing in the record thus far produced to suggest that the non-competition agreement embraced in the 1968 contract was unreasonable. Hence it is enforceable by injunction if it is still in force. The chancellor held, however, that because the employer-employe relationship existing after September 1, 1969, was terminable at will by either party the Company has no cause of action for relief under the non-competition clause of the 1968 contract. We quote from the chancellor's written opinion as follows:

"Throughout these proceedings plaintiff has based his [its] claim for injunction and damages on the May 1968 contract. To prevail the original provisions of the agreement must be enforceable under the terms of a 'hiring at will.' The Court does not believe that a 'hiring at will' is an enforceable contract. This argument of course assumes the original agreement is still enforceable. The Court is of the opinion that under none of those arguments is plaintiff entitled to any of the relief he [it] seeks in his [its] complaint."

■ Presumably, what the chancellor meant by reference to hiring at will as not enforceable is that such a contract is not breached by a unilateral termination and, of course, could not be kept alive by the equi-

table remedy of specific performance. It is nevertheless a "contract" under which rights and obligations exist prior to its termination, and for breach of which there is a remedy at law. Fundamentally, "The relationship of master and servant or employer and employee is contractual in nature." 53 Am.Jur.2d, *Master* and *Servant*, § 14.

■ What is sought to be specifically enforced in this case, however, is not the employment agreement as it existed at the time of its termination in July of 1975, but the non-competition clause contained in the written contract of May, 1968. That clause covered the period of 18 months following cessation of the employment relationship existing either by virtue of the May 1968 contract or by virtue of any new or substitute contract. The only significant issue, therefore, is . whether the oral understanding, or understandings, under which the employment relationship continued to exist between September 1, 1969, and July of 1975 constituted a new or substitute contract or contracts within the meaning of the 1968 contract, and it seems quite clear to us that until Baach terminated the employment he and the Company were operating under a mutual agreement that in fact and law was "a new contract or substitute contract" to which the non-competition clause of the 1968 contract remained fully applicable by its express terms.

■ Baach's argument that enforcement of the non-competition clause is barred by the one-year restriction of the Statute of Frauds (KRS 371.010) apparently assumes that it must be treated as a part of the oral substitute agreement, replacing the 1968 contract *in toto*, but as we view it the non-competition clause of the written contract continued in full force and effect and was never replaced.

One of Baach's contentions is that the provision of the 1968 contract to the effect that it could be renewed or extended for one year or longer "by simple endorsement added thereto" was meant to be the exclusive method by which the non-competition clause, as a part of the contract, could re-

main in force beyond the period of 18 months following the original termination date of September 1, 1969. We cannot so construe it. The non-competition clause clearly was aimed at the end of the employment, whether it continued under the original contract or under any substitute agreement that did not expressly or by necessary implication abrogate it.

The further argument that there was no consideration for the non-competition clause borders on the specious. It is immaterial that Baach was already at work for the Company at the time the 1968 contract was finalized and signed. Harking back to the Statute of Frauds point, for example, it was not until the agreement was reduced to writing and signed that Baach had an "enforceable" right protecting the terms of his employment *in futuro* (that is, until September 1, 1969). This protection alone was a valuable consideration running in his favor.

Subject to the bond requirements of CR 65.05 and 65.07(3), and subject to further order of this court, pending final judgment of the Jefferson Circuit Court in the trial proceeding the respondent, Jack E. Baach, d/b/a JEB Enterprises, is temporarily enjoined from engaging in the business of buying and selling or otherwise dealing in advertising specialties, business gifts, novelties, incentive programs or any similar activity in competition with the movant, Louisville Cycle & Supply Company, Inc., in the same territory in which he engaged in a similar business in the course of his employment with the respondent prior to July 1, 1975. The order entered by the Jefferson Circuit Court on February 2, 1976, denying such relief is vacated, subject to execution of reasonable bond as may be prescribed and approved by that court.

Full court sitting. All concur.