STATE ex rel. John C. DANFORTH, Relator,

v.

Keith P. BONDURANT, Judge of the Circuit Court for the Sixteenth Judicial Circuit of Missouri, Respondent.

No. 59587.

Supreme Court of Missouri, En Banc.

April 28, 1978.

John C. Danforth, Atty. Gen. and Paul R. Otto, Asst. Atty. Gen., Jefferson City, for relator.

Frederick Ernst, Thomas W. Tierney, Donald V. Pierce, Jr., Kansas City, for respondent.

MORGAN, Chief Justice.

Having issued a writ of certiorari, we now decide whether or not respondent judge exceeded his jurisdiction, in a habeas corpus proceeding, by discharging one Richard P. Marin from custody authorized by an extradition (rendition) warrant issued by the Governor of Missouri.

In 1974, Marin was a resident of Colorado and an automobile salesman in Pueblo, where he was charged with fraud in effecting sales—a misdemeanor under that state's law. The specific charge being that Marin violated C.R.S.1973, §§ 18–5–301 (1963 C.R.S. 40–5–301 as amended) by selling a 1969 GMC truck after he had the odometer thereon turned back. He entered a plea of nolo contendere, was sentenced to six months confinement and immediately granted probation (parole). Thereafter, the court discovered that Marin had two prior felony convictions and changed the judgment to require that he actually be incarcerated as mandated by the provisions of that state's Habitual Criminal Act, C.R.S. 1963, § 39–11–201(2) as amended. His conviction and sentence were upheld by the District Court for Pueblo County and his petition for review was denied by the Supreme Court of Colorado. Apparently to avoid imprisonment, he left Colorado and settled in Arizona; but, when authorities were on the verge of securing his extradition there, he fled to Missouri.

In August, 1975, Marin was arrested in Missouri under procedures in keeping with § 548.131, RSMo 1969, and released on his own recognizance pending a request for extradition, which was soon forthcoming.

The "demand" from the Governor of Colorado to the Governor of Missouri was accompanied by a number of documents, including: (1) a copy of the original information against Marin charging him with the crime of fraud in effecting sales, (2) a copy of the original summons issued, (3) supporting affidavits authored by the clerk of Pueblo County, the trial judge and the principal investigator in Marin's case, (4) a copy of the judgment of conviction and sentence, (5) a copy of the opinion of the District Court affirming the conviction, (6) a copy of the bench warrant for his arrest, (7) a copy of the order of the Colorado Supreme Court which denied review and (8) written authentication from the Governor of Colorado that Marin (a) was convicted of the crime of fraud in effecting sales under the law of Colorado, (b) was present in the state of Colorado at the time the crime, for which he was convicted, was committed, (c) thereafter violated the terms of his bond and (d) leaving his sentence unsatisfied because he fled from justice and took refuge in Missouri.

Following a hearing and the Governor's issuance of a rendition warrant, Marin was advised of his right "to apply for a writ of *habeas corpus*" as provided in § 548.101, RSMo 1969. Upon his election to do so, the proceeding now being reviewed followed.

In *Application of Evans,* 512 S.W.2d 238 (Mo.App.1974), the court, while acting in an original proceeding in habeas corpus, as was the trial court in the instant case, delineated its powers and limitations, l. c. 240, as follows:

The scope of our review of extradition proceedings in habeas corpus is narrowly limited to the question of whether the Governor of Missouri exceeded his authority in honoring Georgia's requisition and issuing the rendition warrant. *State ex rel. Anderson v. Weinstein,* 359 S.W.2d 355 (Mo.App.1962). We are expressly prohibited by § 548.201, RSMo 1969, V.A. M.S., from inquiring into the guilt or innocence of the petitioner as to the alleged crime and cannot inquire into the motives underlying the institution of the Georgia charge. *State ex rel. Anderson v. Weinstein,* supra. The conclusions of the Governor of Missouri, as expressed in the extradition warrant, constitute prima facie evidence of such findings. *Hagel v. Hendrix,* 302 S.W.2d 323 (Mo.App.1957). Nevertheless, it is within our prerogative in habeas corpus proceedings to review an arrest pursuant to the issuance of the Governor's rendition warrant to determine whether the Governor exceeded his authority. *Hagel v. Hendrix,* supra. Thus, in the instant case, we are authorized to inquire into the sufficiency of the affidavit giving rise to the criminal charge of the demanding state [*Hayes v. O'Connell,* 263 S.W.2d 66 (Mo.App.1953)] and can determine if the petitioner is a fugitive from justice [*Ex Parte Arrington,* 270 S.W.2d 39 (Mo. banc 1954)].

■ In turn, we recognize that the scope of review of a habeas corpus proceeding by certiorari is the same in Missouri as it was at common law and is based solely upon "the absence or an excess or usurpation of jurisdiction on the part of the court from which the proceedings were removed." *State ex rel. Barker v. Wurdeman,* 254 Mo. 561, 163 S.W. 849 at 850 (banc 1914).

In 1953, the Uniform Criminal Extradition Act was adopted in Missouri. § 548.-031, RSMo 1969, thereof, sets out the necessary criteria of a "demand" upon the Governor for extradition. Its precise wording is crucial to an examination of this case, and it reads as follows:

No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging, except in cases arising under section 548.061, [not herein applicable] that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by information supported by affidavit made before a magistrate there, together with a copy of any warrant which was issued thereupon, *or by a copy of a judgment of conviction* or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand. (Emphasis added.)

■ The ultimate question, and one dispositive of this case, is whether the Governor of Missouri may approve and direct the extradition of a person from this state predicated on the alternative presentation, emphasized above, i. e., "a copy of a judgment of conviction." Obviously, the statute in simple terms provides such documentation is sufficient, and absent some "legal" reason to the contrary should dictate the result.

The trial court ruled otherwise and relied on the holding of this court in *Rummerfield v. Watson,* 335 Mo. 71, 70 S.W.2d 895 (banc 1934), with the following analysis thereof: "Our Supreme Court sitting en banc, after a thorough discussion of Section 2, Article 4 of the United States Constitution and the then existing statutes of the United States and those of Missouri governing extradition, specifically adopted the position that before the executive of an asylum state could remand to a demanding state, the federal statutes must be substantially followed. The Court then recognized that the federal statute required that the person demanded must be a fugitive from justice, and that accordingly, the demanding executive must show him to be a fugitive by production of an indictment found or affidavit made before a magistrate. One or the other must be produced, and without such production the surrendering executive has no authority to issue a rendition warrant. The Supreme Court concluded by stating that to hold that a copy of a judgment of conviction could be substituted for the indictment or affidavit required by the federal statutes would be usurping the functions of congress. *Rummerfield,* decided in 1934, has never been overruled; and the federal statute, 18 U.S.C.A. § 3182 [1] still requires the production of an indictment found or affidavit made before a magistrate. Accordingly, under the latest pronouncement of our Supreme Court, there is no merger of an indictment or affidavit into a judgment of conviction, and the indictment or affidavit contemplated by the federal statute is still an indispensable element of a valid rendition request."

It is not necessary that we defend or challenge the "reason and logic" of the holding in the *Rummerfield* case insofar as it rejected the idea a judgment of conviction was more conclusive of "probable cause" than an indictment or affidavit (complaint) merely alleging a person's guilt. Cf. *State ex rel. Taylor v. Blair,* 358 Mo. 345, 214 S.W.2d 555 (banc 1948). Obviously, the court felt restrained by the specifics of the federal statute (§ 3182, supra) absent any state legislation extending the possibilities to include "a copy of a judgment of conviction" now found in § 548.031.

This court, soon after adoption of the Uniform Act, had before it in *Ex Parte Arrington,* 270 S.W.2d 39 (Mo. banc 1954), a demand for extradition seemingly comparable to that in the instant case and which did include the judgment of conviction. However, the sole issue presented and resolved was the invalidity of that part of § 548.031 which sought to require that "the accused was present in the demanding state at the time of the commission of the alleged crime." The ruling was bottomed on the accepted premise that the federal statute is paramount and that a state statute cannot require more. However, "The Federal extradition statute does not purport to encompass the entire field of extradition and does not prohibit a state from extraditing on less exacting terms than those stated in the Federal statute; . . ." 270 S.W.2d 44[7].

It is difficult to see how the added alternative of the Missouri statute now questioned is anything but a "less demanding term" within the meaning of the above language and thus is not proscribed by the federal statute. As the problem arises, states consistently are so holding.[2] "Al-

1. Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged.

2. See *People ex rel. Hackler v. Lohman,* 17 Ill.2d 78, 160 N.E.2d 792, 798 (1959); *Smith v.*

though proper affidavits and a showing of presence in the demanding state are necessary if extradition is sought solely on a mere accusation of criminality by warrant, complaint, or information, neither is necessary when extradition is for an offense that has resulted in conviction. In the latter circumstances all that is required is record of conviction . . ." *Wynsma v. Leach,* 536 P.2d 817, 819 (Colo.1975). "A person remains charged with crime within the meaning of the constitutional and statutory provisions although he has been convicted, while the judgment of conviction remains unsatisfied, and, after a charge of crime has culminated in a conviction, the record of such conviction is sufficient evidence in extradition proceedings, the question of the sufficiency of the preliminary affidavits in the proceeding in which he was convicted becoming immaterial." 35 C.J.S. Extradition § 9, p. 390.

To hold, in this case, that a person already "convicted" and now sought by extradition was never substantially charged with a crime would be a usurpation of the responsibility and power of the highest court of Colorado; and, it would serve as a precedent to significantly impair the criminal judicial process of foreign states when an accused flees to an asylum state and resists extradition. To rule otherwise, would allow an alleged fugitive to create an unlimited number of "appeals" by fleeing from one state to another. It should be remembered that ". . . in delivering up an accused person to the authorities of a sister state, they are not sending him for trial to an alien jurisdiction, with laws which our standards might condemn, but are simply returning him to be tried, still under the protection of the Federal Constitution, but in the manner provided by the state against the laws of which it is charged that he has offended." *Biddinger v. Commissioner of Police,* 245 U.S. 128, 135, 38 S.Ct. 41, 43, 62 L.Ed. 193 (1917).

The trial court was not bound, as it apparently felt, by this court's opinion in the *Rummerfield* case because of the limitations placed thereon by adoption of the Uniform Criminal Extradition Act.

Having concluded that the copy of the "judgment of conviction" (§ 548.031) was a legitimate substitute for an "indictment found" or an "affidavit made" (§ 3182, 18 U.S.C.A.), we need not consider whether or not we would have agreed with respondent's treatment of the latter.

Respondent also concluded that the crime in Colorado only involved a misdemeanor and ". . . appears to be so insubstantial on its face as to not support a demand for extradition . . ." We reject such reasoning as a predicate for denial of extradition. "The offenses for which a person may be extradited include every offense made punishable by the law of the state in which it was committed, from the highest to the lowest in the grade of offenses, including misdemeanors and statutory crimes, whether or not the offense charged is a crime under the laws of the state of asylum." 35 C.J.S. Extradition § 7, p. 388. Article IV, § 2, of the U.S. Constitution expressly refers to the extradition of "a person charged in any State with Treason, Felony or other Crime." That language "includes every offense, from the highest to the lowest in the grade of offenses, and includes what are called misdemeanors as well as treason and felony . . ." *Kentucky v. Dennison,* 65 U.S. 66 (24 How.) at 99, 16 L.Ed. 717 (1861).

Finding that respondent exceeded his jurisdiction, the writ of habeas corpus as issued is hereby quashed and all provisions thereof are for naught held.

All concur.

*Nye,* 176 Kan. 679, 272 P.2d 1079 (1954); *White v. Noll,* 15 Md.App. 446, 291 A.2d 694 (1972); *Loper v. Dees,* 210 Miss. 402, 49 So.2d 718 (1951); *People ex rel. Matochik v. Baker,* 306 N.Y. 32, 114 N.E.2d 194 (1953); *State ex rel. Yarbrough v. Snider,* 2 Or.App. 97, 465 P.2d 739 (1976); and *Ex Parte Peairs,* 162 Tex.Cr.R. 243, 283 S.W.2d 755 (1955).