Joseph F. DAY, Plaintiff,

v.

ALCAN ALUMINUM CORPORATION, Defendant.

Civ. A. No. 86–0066–0(CS).

United States District Court, W.D. Kentucky, Owensboro Division.

Dec. 29, 1987.

Jeff S. Taylor, Gordon & Gordon, P.S.C., James E. Craig, Owensboro, Ky., for plaintiff.

John Bickel, Thacker, Thacker, Bickel, Wetzel & Hodskins, Owensboro, Ky., for defendant.

## MEMORANDUM OPINION

SIMPSON, District Judge.

This matter is before the Court on motion of the defendant[1], Alcan Aluminum Corporation (hereinafter "Alcan"), to dismiss the complaint for failure to state a claim upon which relief may be granted. The defendant's motion to dismiss will be treated as one for summary judgment, pursuant to the Federal Rules of Civil Procedure. Rule 12(b) of the Federal Rules of Civil Procedure states:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The parties have thoroughly briefed the issues presented herein.[2] For the reasons set forth below, the defendant's motion to dismiss will be granted in part and denied in part.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151–60, 90 S.Ct. 1598, 1605–09, 16 L.Ed.2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir.1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive

---

1. The defendant, Atlantic Richfield Company, was dismissed pursuant to agreement of the parties.

2. The parties have failed to comply with Rule 7(e) of this Court's Local Rules; however, the Court found other authority to be dispositive of the matters in issue.

law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the nonmoving party. *Id.*, 106 S.Ct. at 2510. The disputed issue does not have to be resolved conclusively in favor of the nonmoving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir.1962).

This action arises out of the alleged wrongful termination of the plaintiff from his position as a laboratory technician for Alcan. The plaintiff states that he was initially hired by the Atlantic Richfield Company on November 27, 1972. He states he was diagnosed as having a handicap known as sleep apnea and hypertension and that, as a result of this handicap, Atlantic Richfield wrongfully discharged him from employment on November 30, 1983. The plaintiff then sought the assistance of the Employment Standards Administration, Office of Federal Contract Compliance Programs of the U.S. Department of Labor and, in September of 1984, the plaintiff was reinstated as a laboratory technician pursuant to an agreement between the plaintiff and Atlantic Richfield. In January of 1985, Atlantic Richfield sold its Sebree Reduction Plant (in which plaintiff worked) to Alcan. The plaintiff's employment continued under Alcan management. The plaintiff states that on or about April 15, 1985, he was informed that he was being reassigned to a rotating shift, in violation of the agreement, and he immediately notified the Department of Labor.

He claims that on April 23, 1985, he was wrongfully discharged from his employment in retaliation for reporting the contract violation and/or because of his handicap. He claims that his termination was in violation of the agreement, was in violation of federal and state law, and was in violation of a well-defined public policy of the Commonwealth of Kentucky.

■ In Count I of the complaint, the plaintiff has alleged a cause of action for wrongful discharge as a violation of Section 503 of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 793. The plaintiff claims that an "implied right" exists to bring such an action; however, the Sixth Circuit, in accord with many other jurisdictions, has explicitly held to the contrary:

> Even if appellant is a handicapped person under the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 793, that statute provides for an administrative remedy through the Department of Labor and does not authorize a private cause of action in the courts. *Hoopes v. Equifax, Inc.*, 611 F.2d 134, 135 (6th Cir.1979).

Accordingly, Count I of the complaint will be dismissed.

In Count IV of the complaint, the plaintiff alleges discharge because of his handicap in violation of Kentucky's Equal Opportunity Act, KRS 207.130 et seq.[3]

KRS 207.230 creates a right of action to pursue citizen suits:

> Notwithstanding the provisions of KRS 207.200 [4] and 207.210 [5], citizen suits may be commenced under the following terms and conditions:
>
> (1) Any person deeming himself injured by any act in violation of the provisions of this chapter [6] shall have a civil cause

---

**3.** At this writing, it appears to the Court that there is diversity of citizenship among the parties. The complaint states that the plaintiff, Day, is a citizen of Kentucky and the defendant, Alcan, is an Ohio corporation licensed to do business in Kentucky.

**4.** Enforcement by Department of Labor.

**5.** Administrative complaint procedure—types of affirmative action.

**6.** Equal Opportunities Act. KRS 207.150 provides in pertinent part: "No employer shall fail or refuse to hire, discharge, or discriminate against any handicapped individual with respect

of action in circuit court to enjoin further violations, and to recover the actual damages sustained by him, . . . all of which shall be in addition to any other remedies contained in KRS 207.130 to 207.240.

Assuming, *arguendo*, that the plaintiff is a handicapped individual as defined under the Kentucky Equal Opportunity Act, the defendant asserts that the cause of action is barred due to the plaintiff's failure to comply with certain requirements for notice and filing within the statutory period. The defendant has erroneously interpreted the structure of the chapter.

The statute of limitations argument of the defendant directs the Court to KRS 207.200(2) which requires any handicapped individual requesting intervention of the Kentucky Department of Labor to submit a sworn statement concerning the incident and his request to the Department within 180 days of the incident. Within the language of the statute itself, it clearly applies only to requests for intervention by the Kentucky Department of Labor. That was not the route chosen by the plaintiff. The defendant states that "this is interpreted by the commissioner of workplace standards as imposing a 180 day statute of limitations"; however, he fails to address what this statute limits, nor does he cite any authority or affidavit in support.

*Clifton v. Midway College,* 702 S.W.2d 835 (Ky.1986), provides some guidance on this point. The *Clifton* opinion addressed the statute of limitations question in regard to the Labor and Human Rights Chapter of the KRS, Chapter 344. It should be noted at this point that the language of the two sections providing for civil causes of action are very similar. KRS 344.450 states:

> Any person deeming himself injured by any act in violation of the provisions of this chapter shall have a civil cause of action in circuit court to enjoin further violations, and to recover the actual damages sustained by him . . . all of which

shall be in addition to any other remedies contained in this chapter.

(Compare with the language of KRS 207.230 set forth hereinabove).

The *Clifton* case held:

> The only time limitation is the 180 days for filing complaints found in KRS 344.200(1).[7] This limitation is obviously a procedural requirement only for invoking the administrative process. It is not a time fixed by statute creating the liability, see KRS 413.120(2), because it is entirely independent of the provisions that create the liability in Chapter 344. KRS 344.200(1) does not apply to actions commenced in the courts. The proper statute to be applied in such actions of a civil rights nature is KRS 413.120(2); (citations omitted).

*Clifton,* supra, at 837.

KRS 413.120(2) states that "an action upon a liability created by statute, when no other time is fixed by the statute creating the liability" shall be commenced within five years after the cause of action accrued. Clearly KRS 207.230 creates a liability and, in accordance with the rationale of *Clifton,* the Court finds the five-year statute of limitations in KRS 413.120 to be applicable.

The second argument of the defendant is that even if the 180–day statute of limitations is found not to apply, the plaintiff has failed to comply with the notice provision in KRS 207.230(2)(a); therefore, the plaintiff's claim based upon this statute should fail.

KRS 207.230(2)(a) provides:

> (2) Notice. No action may be commenced:
> (a) Prior to thirty (30) days after the plaintiff has given notice of the violation to the commissioner of workplace standards.

It appears that there is no authority interpreting the notice section of KRS 207.230. The Court must, therefore, follow the tradi-

---

to wages, rates of pay, hours or other terms and conditions of employment because of such person's physical handicap . . ."

7. KRS 344.200 provides for the filing of a complaint with the commission on human rights, with administrative remedies available to the commission to attempt to eliminate any discrimination so found.

tional rules of statutory interpretation and give the statute its plain meaning. There is nothing in the statute *requiring* that notice be given to the commissioner of workplace standards prior to the commencement of a civil action. The statute merely states that *in the event* that the plaintiff gives notice to the commissioner of workplace standards (i.e., has chosen to give notice preparatory to the filing), the plaintiff cannot then initiate a civil action until thirty days after giving notice to the commissioner. "The function of a court is limited to a reasonable interpretation of legislative language, and does not extend to a psychoanalysis of legislative intent." *Smith v. Magruder*, 566 S.W.2d 430 (Ky. App.1978). The language of KRS 207.-230(2) is clear and the Legislature is presumed to be familiar with the law. The defendant's motion to dismiss will be denied as to Count IV of the complaint.

Counts II, III, V and VI are interrelated with the question of the plaintiff's employment status with Alcan. The parties have briefed their respective positions for the Court concerning the effect of the "Agreement and Release" entered into between the plaintiff and defendant, a copy of which appears as Exhibit "A" to the complaint herein.

The plaintiff claims that the "agreement" constitutes a permanent employment contract and alleges that discharge of the plaintiff because of his handicap constitutes a breach of the employment contract (Count II) and breach of an implied covenant of good faith and fair dealing and implied promises of affirmative action under the contract (Count III). Additionally, the plaintiff explains in his brief that Count V is an alternative allegation, should the Court find the plaintiff to be an employee-at-will. The plaintiff claims that discharge of the employed-at-will plaintiff because of his handicap would, in this case, constitute a violation of a fundamental and well-defined public policy, both federal, under the Rehabilitation Act of 1973, and state, under KRS 207.150. Lastly, the plaintiff alleges in Count VI that the discharge was "malicious and retaliatory, with the intent to deprive the plaintiff of his statutory rights to report violations of his employment agreement."

■ Counts II and III are premised upon an interpretation of the "Agreement and Release", referenced earlier, as a permanent employment contract. *Shah v. American Synthetic Rubber Corporation*, 655 S.W.2d 489, 490 (Ky.1983), states:

The duration of an employment contract must be determined by the circumstances of each particular case, depending upon the understanding of the parties as ascertained by inference from their written or oral negotiations and agreements, the usage of business, the situation and objectives of the parties, the nature of the employment, and all circumstances surrounding the transaction."

It is not an employment contract that is in issue herein, however. The document in issue is a settlement agreement which provides for employment. It is labeled "Agreement and Release" on the face of the document. The distinction is crucial to the ramifications of that document.

The agreement provides for reinstatement. "Reinstatement" is defined in *Black's Law Dictionary*, 5th Ed. West Publishing Co. (1979) as "to reinstall; to reestablish; to place again in a former state, condition or office; to restore to a state or position from which the object or person had been removed." From all indications the plaintiff was originally hired as an employee-at-will. There is no reference to a term contract in the record. A reinstatement to his former position, therefore, would place him again in the status of an employee-at-will, as a "permanent" employee only insofar as both employee and employer choose to maintain that relationship.

There are greater obligations, however, which Alcan has undertaken. A breach of those obligations may establish a cause of action under contract law. Specifically, Alcan has bound itself to assign the plaintiff exclusively to a straight, as opposed to a rotating shift (paragraph 4[c] of the "Agreement and Release") while the plaintiff is in Alcan's employ. There was good consideration given by the plaintiff for this

provision in that he bargained away his rights to pursue his initial discrimination claim. It is alleged by the plaintiff that this term was breached on or about April 15, 1985, when the plaintiff was informed that he was being reassigned to a rotating shift. *Louisville Cycle & Supply Co., Inc. v. Baach,* 535 S.W.2d 230 (Ky.1976) held:

> Presumably, what the chancellor meant by reference to hiring at will as not enforceable is that such a contract is not breached by a unilateral termination and, of course, could not be kept alive by the equitable remedy of specific perform-ance. It is nevertheless a "contract" un-der which rights and obligations exist prior to its termination and for breach of which there is a remedy at law. Funda-mentally, "the relationship of master and servant or employer and employee is con-tractual in nature." (citation omitted).

*Id.* at 233.

The reinstatement of the plaintiff does not appear to be more than employment-at-will, but, as clearly set forth in the agree-ment, the plaintiff bargained for certain conditions *during* his employment.

Count III makes reference to Alcan's statements concerning affirmative action policies of the company. A recent Ken-tucky decision, discussing the impact of the *Shah* and *Grzyb* [8] decisions, stated that the employment handbook therein contained "policy statements which ... management admittedly strove to follow, but this is not tantamount to an expression of a contrac-tual agreement where the language is not contractual." *Nork v. Fetter Printing Company,* 738 S.W.2d 824 (Ky.App.1987). The *Nork* court further stated "an action for wrongful discharge does not lie for one whose loss of work is actuated by the elimi-nation of the job itself due to legitimate economic or business reasons, and not as a bad faith pretext to terminate the worker." See also *Cleverly v. Western Electric Company,* 594 F.2d 638 (8th Cir.1979). Counts II and III, therefore, will be dis-missed, as they are premised upon a con-tract for permanent employment.

Count V of the complaint alleges that the plaintiff was discharged on the basis of his handicap and that such dis-charge of an employee-at-will is in violation of the policies of the United States and the Commonwealth of Kentucky. Count VI of the complaint alleges that the discharge of the plaintiff was malicious and retaliatory in nature with the intent to deprive him of his statutory rights and protection in that he was discharged for reporting Alcan's "contract violation" to the U.S. Department of Labor.

The plaintiff asserts that Counts V and VI should not be dismissed, as they allege circumstances which constitute an excep-tion to the employment-at-will doctrine. *Firestone Textile Co. Div. v. Meadows,* 666 S.W.2d 730 (Ky.1984), set forth the excep-tion upon which the plaintiff relies:

> (1) The discharge must be contrary to a fundamental and well-defined public poli-cy as evidenced by existing law.
> (2) That policy must be evidenced by a constitutional or statutory provision.
> (3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

The plaintiff states that the public policy violated in this case is evidenced in the Vocational Rehabilitation Act of 1973 found at 29 United States Code and in the Ken-tucky Equal Opportunity Act, KRS 207.130 et seq.

The plaintiff states in his memorandum that "any interpretation of public policy rights flowing to the plaintiff under the Rehabilitation Act would hinge upon this Court's interpretation of the arguments previously set forth herein concerning whether a private right and cause of action exists under the statute for an aggrieved party." As stated earlier in this Memoran-dum Opinion, this Court does not believe that such a right exists.

In support of his position that the well-defined public policy can be found in the Kentucky Equal Opportunity Act, the plaintiff cites *Firestone,* supra, and at-

---

**8.** *Grzyb v. Evans,* 700 S.W.2d 399 (Ky.1985).

tempts to distinguish the *Grzyb* decision. He states that KRS 207.150 provides that no employer shall discharge a person because of his physical handicap unless that handicap restricts the individual's ability to engage in a particular job. He states further that there is no provision in the statute that preempts the field for seeking relief under this statute. This Court finds, contrary to the plaintiff's position, that the legislative enactment does preempt the field.

The *Grzyb* decision is applicable to the case herein in light of the striking similarity, as noted earlier, between the Kentucky Civil Rights chapter at KRS 344 and the Equal Opportunity chapter at KRS 207.

The Kentucky Supreme Court in *Grzyb*, supra, attempted to make clear its intent in *Firestone v. Meadows*, supra, and *Pari–Mutuel Clerk's Union v. Ky. Jockey Club*, 551 S.W.2d 801 (Ky.1977). The Court stated that "both cases involved public policy which was clearly defined by statute and directed at providing statutory protection to the worker in his employment situation." *Grzyb*, supra at 400.

The *Grzyb* decision presented a different set of facts than that found in either *Firestone* or *Pari–Mutuel*, and thus *Grzyb* mandated a different result. The Court was careful to note that "employers as a group have a legitimate interest to protect which requires that the cause of action for wrongful discharge be clearly defined and suitably controlled." *Grzyb*, supra at 401. The Court held that:

> Assuming it was sufficiently alleged, the claim of sex discrimination would not qualify as providing the necessary underpinning for a wrongful discharge suit because *the same statute that enunciates the public policy* prohibiting employment discrimination because of "sex" *also provides the structure for pursuing a claim for discriminatory acts in contravention of its terms.* See KRS Chapter 344, Civil Rights.
> KRS 344.040 provides that it is "unlawful practice for an employer ... to discharge any individual ... because of such individual's race, color, religion, na-

tional origin, sex, or age between forty (40) and seventy (70)." The Kentucky Commission on Human Rights is structured in KRS Chapter 344 to adjudicate complaints of discrimination on these grounds.... The statute not only creates the public policy but preempts the field of its application.... *Where the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute.*

*Grzyb*, supra at 401. (Emphasis added).

In both *Firestone* and *Pari–Mutuel*, the Court found that an important public policy had been violated and that the statute embodying that policy provided no specific means of redress. *Grzyb*, on the other hand, involved allegations of a violation of public policy explicitly enunciated in a statute which further provided the civil remedy. In that situation, the claim could not constitute the basis for a wrongful discharge suit since the Legislature, after creating the statutory prohibition against discriminatory discharge, set forth the means by which violations are to be redressed.

The Civil Rights chapter, KRS 344, and the Equal Opportunity chapter, KRS 207, cannot be distinguished in regard to their structure. Both state explicitly the prohibited behavior by employers and provide specific means of redress and the damages available for violations of the respective chapters. Thus the *Grzyb* analysis applies equally to the public policy embodied in KRS Chapter 207 and such provision cannot form the basis for claiming an exception to the employment-at-will doctrine in this case. Counts V and VI of the complaint will, therefore, be dismissed.

■ The plaintiff cites *Bleecker v. Drury*, 3 F.R.D. 325 (D.C.N.Y.1944), for the proposition that the motion to dismiss ought to be denied in its entirety if one cause of action is sufficient, and notes that the motion of the defendant requests that the complaint as a whole, rather than the individual counts, be stricken. The defendant has obviously moved for a complete dismissal because it asserts that each and

every count is defectively pled. The Court does not find that all of the counts must be stricken and notes that the plaintiff has correctly quoted *Bleecker* as stating that dismissal should be denied "... unless the court chooses to regard the motion as addressed separately to each cause." *Id.* at 327. The defendant has set forth its objections to the counts of the complaint individually, as was necessary in light of the fact that different bases for the counts were set forth by the plaintiff. The Court finds it appropriate to regard the motion as being addressed separately to each cause.

The defendant has cited the case of *Bell v. Citizens Fidelity Bank & Trust Co.,* 636 F.2d 1119 (6th Cir.1980), stating that "the Sixth Circuit Court of Appeals, in reviewing an employment discrimination suit ... held that a plaintiff's/appellant's allegations that a discharge resulted in retaliation for his exercise of certain express statutory rights were matters which could not be satisfactorily disposed of on a summary judgment record." (Defendant's Memorandum in Response at p. 21).

 This Court is not convinced that the Sixth Circuit intended such a conclusion to be drawn. The order of remand in the *Bell* case is filed without opinion, except to state that there was both the issue of retaliation for the exercise of a federal right expressed in statutory form and the issue of whether such a practice had a discriminatory impact on blacks. The Court stated that those issues could not be satisfactorily disposed of on *the* summary judgment record (*Id.* at 1119 [emphasis added]) not that summary judgment is never appropriate in such a case. For purposes of the motion, the Court has assumed the facts in the light most favorable to plaintiff. The question of the viability of a particular cause of action is a matter of law to be determined by the Court when the essential facts are undisputed.

For the reasons set forth above, the motion of the defendant, Alcan Aluminum Corporation, to dismiss the complaint will be granted in part and denied in part. A separate order in conformity herewith will be entered herein this date.

ORDER

Motion having been made by the defendant, Alcan Aluminum Corporation, to dismiss the complaint herein for failure to state a claim upon which relief may be granted, and for the reasons set forth in the Memorandum Opinion entered herein this date, and the Court being otherwise sufficiently advised,

IT IS HEREBY ORDERED AND ADJUDGED that:

1. The motion to dismiss is GRANTED as to Counts I, II, III, V, and VI.

2. The motion to dismiss is DENIED as to Count IV.