William J. WILLIAMS, Plaintiff

v.

KRAFT FOODSERVICE, INC., Defendant.

Civ. A. No. C92–0131–P(H).

United States District Court,
W.D. Kentucky,
at Paducah.

Dec. 15, 1993.

W. Fletcher McMurray Schrock, McMurry & Livingston, Paducah, KY, Robert Nienhuis, Goldstein & Price, St. Louis, MO, for plaintiff.

Mark C. Whitlow, Whitlow, Roberts, Houston & Russell, Paducah, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This case is before the Court on Plaintiff's motion to alter, amend, or vacate the Court's Memorandum Opinion and Order entered on August 20, 1993, that dismissed Plaintiff's claims of (1) age discrimination and (2) handicap discrimination and let stand the allegation that (3) Defendant had illegally discouraged Plaintiff from filing for worker's compensation benefits. Plaintiff's Motion to Reconsider challenges only the Court's decision regarding point (2) above.

Plaintiff's motion raises the issue of what employment may constitute a "job or occupation" under KRS 207.150(1). Because Plaintiff raises several valid points regarding the Court's interpretation of this difficult issue, the Court is thoroughly reviewing its findings and setting them forth at greater length herein. For the reasons discussed below, the Court will sustain Plaintiff's motion; amend its order of dismissal; and reinstate Plaintiff's claim of handicap discrimination arising under KRS 207.150.

### I.

Between April 27, 1990, and November 2, 1990, Plaintiff underwent two orthoscopic surgeries on his right knee. He took medical leave at this time and received full pay. (Scourick Aff. ¶ 3). In October, when Plaintiff's short-term disability benefits were about to expire, Plaintiff told his supervisor, Scourick, that he wished to return to work. (Scourick Aff. ¶ 4). At this time, however, Plaintiff was not physically able to perform his former duties as a delivery man and truck driver. (Scourick Aff. ¶ 4; Pl.'s Dep. at 26.)

Kraft has a policy that employees who are injured for any reason may not return to work until they are physically able to perform their duties. (Def.'s Mem.Supp. Summ.J. at 3–4.) Kraft, however, made an exception for Plaintiff by creating what it called a temporary "light duty" position. According to Kraft, Plaintiff could perform this temporary job until he was able to return to his former job. (Scourick Aff. ¶¶ 5, 6.) Kraft did not establish a new position, but instead merely "borrowed" duties from janitors and beverage machine maintenance technicians. (Scourick Aff. ¶ 5.) Plaintiff commenced this temporary position in November of 1990 and worked for six months. (Pl.'s Dep. at 25.) Plaintiff does not recall whether Scourick told him his new position was temporary, but Plaintiff stated: "I thought it would probably be a temporary job until a full time job come open, that's what I would have thought, if it was a temporary job, if it was. I would be there until somebody quit, or was fired, or left [sic]." (Id. at 32.)

On March 28, 1991, Plaintiff's physician, Dr. Thomas, informed Scourick that Plaintiff would seriously damage his knee if he returned to his former position. Thomas also recommended that Scourick permanently place Plaintiff in a less strenuous job. (Letter from Thomas to Scourick of March 28, 1991.) Plaintiff admits that in May of 1991, he probably could not have performed his former duties. (Pl.'s Dep. at 34.) On May 7, 1991, after consulting with Kraft's corporate headquarters, Don Higdon, the president of the Paducah facility, terminated Plaintiff's employment. (Def.'s Mem.Supp.Summ.J. at 6.) At that time, Plaintiff was fifty-four (54) years old. Kraft did not replace Plaintiff but instead reassigned his duties to the employees from whom they were "borrowed." (Id.)

### II.

No doubt Defendant could have properly refused Plaintiff's return to work and ultimately could have terminated Plaintiff from his original delivery position on the basis of Plaintiff's handicap without violating Kentucky's Equal Employment Opportunities Act. Plaintiff's handicap clearly rendered him unable to "engage in the particular job or occupation for which he [was] eligible." KRS 207.150(1). Plaintiff's request for reconsideration, though focuses on his eligibility for a *different* job: the janitorial position that Plaintiff was performing at the time he was terminated. Plaintiff argues: (1) the janitorial role was a "job or occupation for which he was eligible," and (2) his handicap

does not render him unable to perform those janitorial duties.[1]

The Court's prior Memorandum Opinion concluded, in essence, that Plaintiff's janitorial position was *not* his "particular job or occupation."[2] The Court agreed with Defendant's contention that the evidence showed that the janitor's role was merely a charitable make-work assignment and that Defendant created the janitorial position solely to tide Plaintiff over until he returned to his real, ongoing "job or occupation," the delivery job. The Court cited several pieces of evidence to support this interpretation, including Plaintiff's own estimation that the job was "temporary."[3] The Court thus reasoned that Plaintiff's only "job or occupation" was that of delivery-man; Plaintiff's injury left him unable to perform that job; therefore Defendant's termination complied with the law.

Plaintiff disputes the Court's analysis and cites evidence suggesting that Plaintiff's position as janitor was "permanent." Most significant is an "Employee Status Notice" in which one of Defendant's officials, while describing Plaintiff's janitorial job, checked a box labelled "regular, full-time" rather than a box labelled "temporary." (See Pl.'s Mot. for Reconsideration, Ex. 1.) Plaintiff lists other deposition statements, from himself and Defendant's officials, which suggest that the janitorial job was not necessarily "temporary." If Plaintiff is correct, then a jury could conclude that Plaintiff's "job or occupation" was as janitor, and that Defendant fired him because of his handicap from a job for which Plaintiff was eligible.

---

1. There is no apparent disagreement that Plaintiff *is* capable of performing the janitorial duties assigned to him after his injury.

2. It seems fairly clear that Plaintiff was "eligible" to be a janitor, i.e. his injury did not render him incapable of performing those duties. The question is whether the janitorial position was Plaintiff's "job or occupation."

3. The more "temporary" a task, the less likely an employer or employee will consider the task to be the worker's "job or occupation." Consider the situation where a janitor is asked to substitute for a vacationing delivery-man. The janitor's new task is "temporary," and neither janitor or employer is likely to consider the janitor to be a delivery-man. While the janitor is driving the company's van, he is essentially a janitor-temporarily-making-deliveries, not a "delivery-man."

4. Many "permanent" workers in Kentucky are at-will employees, anyway, a status that Judge Simpson described as " 'permanent' … only insofar as both employee and employer choose to maintain that relationship." *Day v. Alcan Aluminum Corp.*, 675 F.Supp. 1508, 1512 (W.D.Ky. 1987) (Simpson, J.) (holding KRS 207.130 applicable to an at-will employee).

---

## III.

Upon review the Court concludes that the "temporary/permanent" nature of Plaintiff's janitorial position, though highly relevant, is not legally dispositive. Nothing in Kentucky law permits employers to discriminate against temporary workers, but not permanent workers.[4] The question in this case is whether Plaintiff's janitorial assignment was Plaintiff's "job or occupation" as defined by Kentucky's anti-discrimination statute. If that assignment was or became Plaintiff's "job or occupation" as KRS 207.150(1) intended to apply the terms, then Defendant could not legally fire Plaintiff because of his handicap, regardless of the position's temporary or permanent nature.

Neither the statute itself nor any Kentucky cases provide help in this definitional dilemma. There is no evidence of legislative intent to help define these ambiguous terms. Any attempt to conclude a "bright line" rule for this situation encounters conflicting policy objectives.

Since Defendant could have fired Plaintiff from his original delivery position, surely Defendant could legally take a less-drastic step—for example, transfer Plaintiff to another job. Defendant could limit that new job to a few months, one would assume, or make it an at-will position, without violating the discrimination laws. Plaintiff, under such circumstances, would essentially be a "delivery-man-doing-janitorial-work."

Significant public policy concerns suggest a decision *against* Plaintiff in this case and in favor of giving employers needed flexibility. If Defendant had fired Plaintiff immediately upon the occurrence of his injury, Defendant

would face no handicap-discrimination claims today. Plaintiff's cause of action is based upon Defendant's apparently generous decision to forego an immediate termination. Holding Defendant liable might encourage other employers to terminate injured employees immediately since temporary reassignment to lighter duties would expose the employer a later civil rights judgment. Finding for Defendant would, therefore, benefit other similarly situated employees by providing an encouragement for employers to provide temporary employment while an employee recovers.

On the other hand, surely the legislature did not countenance employers placing an employee on a permanent temporary status so that the employee never regains his rights under the Disabilities Act. Defendant's legal theory, pursued to its natural conclusion, would mean that a janitor, transferred from his original delivery job 5 years ago, could be fired today because of a handicap that renders him incapable of performing his long-defunct delivery duties. There must be a limitation of some kind on the length of time, considering the circumstances of the particular case, that an employer can maintain an employee in a certain position before that position must be recognized as the employee's new "job or occupation" under KRS 207.150. Otherwise, the employee would be effectively disenfranchised of his rights under the Disabilities Act by the simple expedient of being transferred from his original "job or occupation" to a new position.

### IV.

The Court concludes that it is inappropriate to determine as a matter of law that Plaintiff's janitorial position, even if defined as temporary, was not his "job or occupation" for purposes of KRS 207.150. The evidence clearly favors Defendant's side of the case. Nevertheless, the facts are sufficiently in conflict that the jury should decide whether Plaintiff was fired from his "job or occupation" or merely terminated from a temporary "make work" position.

In reaching its decision, the jury should be allowed to consider, among other things: (1) what Defendant told Plaintiff about nature of the job and what Plaintiff believed about the job; (2) how Defendant created the job; (3) Plaintiff's length of time at that job; (4) the uniqueness of the job (whether other employees were similarly categorized); (5) the job pay compared to his previous job and (6) whether other employees performed the same job or job duties before or since Plaintiff.

The Court will enter an appropriate order sustaining Plaintiff's motion.

### ORDER

This case is before the Court on Plaintiff's motion to alter, amend or vacate the Court's Memorandum Opinion and Order entered on August 20, 1993. The Court having reviewed the matter and having issued the Memorandum Opinion and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion to alter, amend or vacate is SUSTAINED. The Court's Order of August 20, 1993, shall accordingly be vacated to the extent that Order dismissed Plaintiff's handicap discrimination claim arising under KRS 207.150. Defendant's motion to dismiss that claim is now DENIED. The remainder of the August 20, 1993, Order shall remain unchanged.

