**PRODUCTION OIL COMPANY, Appellant,**

**v.**

**Clayton JOHNSON, Appellee.**

Court of Appeals of Kentucky.

May 16, 1958.

Everett L. Miller, Campton, for appellant.

E. E. Bach, J. Douglas Graham, Campton, for appellee.

STANLEY, Commissioner.

The appeal is by Production Oil Company from a judgment for $4,600 for a balance of salary claimed to be due by the appellee, Clayton Johnson.

The appellant owned a large acreage of oil and gas leases in Wolfe and Lee Counties. Its executive office was in Detroit and its field office in Campton, Kentucky. The appellee's wife, Mrs. Edna W. Johnson, who resided in Campton with her husband, owned one-fourth of the company's stock and was its secretary and local treasurer or paymaster. By an oral contract made in November, 1954, the appellee was employed by the appellant as supervisor of its local property at the rate of $100 per week. The issues in the case were (1) whether in August, 1955, Johnson agreed to a reduction of his pay to $50 a week, and (2) as to when the contractual relationship between the parties terminated. The evidence is indefinite and leaves much to inference.

It seems that oil production and operation of the properties had become unprofitable by August, 1955, through no fault of the supervisor, Johnson, who appears to have diligently performed his services. On August 12, 1955, Johnson wrote Walter J. Murray, president of the company, in Detroit, saying that he realized the unprofitable conditions and reviewing the status and current operations and facilities. One paragraph of Johnson's letter reads:

"Since I have this property in the very best working condition, *there is absolutely no excuse or need for* any labor other *than the pumper,* costing $160.00 per month, and an average of about $40.00 per month for oil and gas. Therefore, *there is nothing left for me to do.* I have invested all of my and my wife's savings in this deal. As Mr. Rovin and I discussed today, the Corporation does not care to go any further in the drilling and development of both properties, my wife and I will have to make some other arrangements for a living and cannot stay in the deal."

The emphasis is in the original letter. Mr. Rovin, referred to, occupied some relation to the president of the company as a temporary assistant or agent. The letter from which the above quotation is made continues with references to selling "our interests" to the company or joining in a sale of the entire holdings. It contains the following:

"We are giving our landlord notice that we are leaving Sept. 1, therefore we want to be ready by that time.

"This is a splendid deal as a holding proposition. There is no reason for additional expense, other than gas, oil and pumper, and, when fully equipped, would realize 25% on investment."

Johnson testified that he also talked to Murray on the telephone about this time but does not relate any part of the conversations.

According to Murray, he wrote Johnson that he was going to cut overhead expenses since drilling operations had ceased, and had sent Rovin to Campton to see about the conditions and to reduce Johnson's salary to $50 a week. Johnson and his wife testified that Rovin told them the company was short of money and could not pay his salary in full. He suggested that Johnson accept $50 a week as part payment for three or four months until the company got in better financial shape when it would pay the balance due. Johnson agreed to this.

On the contrary, Rovin testified there was no understanding of any sort as to deferring part payment of Johnson's salary, and because Johnson had said he could not get any other work in the community and wanted to stay around to protect the interests of his wife and the company, Rovin suggested that he continue at a salary of $50 a week and Johnson agreed. Subsequent correspondence between the parties and the fact that the vouchers and checks sent in payment of $50 a week bore no indication as to being partial payments, all tend to confirm the testimony of Murray and Rovin. Nevertheless, there was a definite contrariety of the evidence on this issue.

■ The contract of employment not being for a definite period, it was, of course, terminable at any time by either party. Gambrel v. United Mine Workers of America, Ky., 249 S.W.2d 158. The appellee testified that he never quit or ceased to work for the company until after he filed this suit in October, 1956.

On the other hand, the appellant insists the contract of employment was terminated as of March 29, 1956.

■ On February 25, 1956, Mrs. Johnson wrote a letter to Murray, the president of the company, in which she referred to the vain efforts of her husband and herself "to make a success or sale of our properties;" stated that Clayton was going to Lee County to store the tools and to notify the pumper to cease pumping as of February 29 and that the electric service would be disconnected; that a list of all the equipment and outstanding bills would be mailed to Murray. She recited the financial difficulties they had had since her husband had been paid $50 a week. She wrote further:

"* * * Clayton is going to work for another party, and so am I. We have tried to hold this deal together hoping we could all come out on top but we are at the end of the line.

"Telephone service will be discontinued as of Mar. 1, all records will be filed in the office. If you wish to contact me call Ashland, Ky., East 48749 and they can tell you where I can be located. The keys to the files and office will be mailed to you. We will not be responsible for any losses or anything that might happen to the property." (The emphasis is in the letter.)

On March 8, 1956, Murray requested Mrs. Johnson to give him "a memo on the status of Clayton's salary and Chaster Mays, so I can plan accordingly." She furnished the memorandum showing that Mays had been paid in full to February 1, 1956, and "Clayton Johnson, paid at the rate of $50 per week from August 20, 1955, to February 18, 1956."

It is certain that Johnson was not paid anything after March 29, 1956. It appears, however, that he continued to look after the property in a general way. On May 4, 1956, he wrote Murray describing his

activities, stating his respect for Murray and his own disappointment over the failure to make their joint venture profitable. The letter continues:

"All I know to do is to leave everything to the 4 winds unless you decide to come down here and look the situation over and talk face to face and see for yourself, first hand, the entire situation. Maybe *we* could work out something whereby *we* could keep operating until *we* get this deal sold. * * * *I will not do anything further* and will not embarrass you with any more bills or make any further suggestions."

It seems to us that this evidence conclusively shows that Johnson terminated the contract of employment or agreed to its termination as of March 29, 1956. He had made no demand either for the payment of the claimed balance of $50 a week for some thirty weeks until March 29, nor for any salary after payment was stopped on that date. Whatever service he rendered the company was as a volunteer in connection with looking after his wife's interest in the property (which was one-fourth) or his later service was unknown to the company's executive officers. If it was the former, there appears to have been no obligation on the part of the company to pay him. If the company knew of the services and accepted them, Johnson's recovery must have been on quantum meruit, and there was no attempt to prove that measure of recovery.

The instructions given the jury were those offered by the plaintiff. They were radically erroneous. The appellee contends that the appellant is in no position to question the instructions because its grounds of objection were general and not specific as required by Rule 51. We deem the objections to the instructions sufficient to justify the court in considering the error. We conclude that the evidence as to the right of recovery of payment after March 29, 1956, was not sufficient in law to take

that issue to the jury, and that the instructions should have been confined only to the issue as to whether there was a definite reduction in the appellee's salary to $50 a week or whether there was a mere postponement of the payment of the balance until the contract was terminated.

The judgment is accordingly reversed for proceedings consistent with this opinion.

Reversed.