James David MORRISON, Appellant,

v.

KENTUCKY CENTRAL
INSURANCE CO., Appellee.

KENTUCKY CENTRAL INSURANCE
CO., Appellant,

v.

GREAT AMERICAN INSURANCE
CO., Appellee.

Court of Appeals of Kentucky.

April 17, 1987.

William A. Dykeman, W.T. Ingerton, Lexington, for James David Morrison.

Gregg Neal, Neal & Davis, Shelbyville, for Kentucky Cent. Ins. Co.

Raymond G. Smith, Edward H. Stopher, Alice Herrington, Boehl, Stopher, Graves & Deindoerfer, Louisville, for Great American Ins. Co.

Before CLAYTON, MILLER and WILHOIT, JJ.

WILHOIT, Judge.

These appeals concern interpretation of the Motor Vehicle Reparations ("no-fault") Act. The summary judgments on appeal are from a personal injury action initiated to recover damages resulting from a one-car accident.

James Morrison was injured August 19, 1980, when he allegedly lost control of his car as he attempted to avoid hitting a road construction sign placed along I–64 in Shelby County by Shamrock Construction Company. Mr. Morrison collected basic reparations benefits (BRB) from his insurer, Kentucky Central Insurance Company. Morrison filed a complaint in August 1981 against Shamrock Construction Company, whose liability insurer was Great American Insurance Company. The accident occurred during the scope and course of Morrison's employment, and Morrison also pursued workers' compensation benefits. Morrison entered into an agreement as to compensation in 1982 with his employer's compensation carrier, Insurance Company of North America (INA). Both Kentucky Central and INA filed intervening complaints in the personal injury action seeking reimbursement of the no-fault and workers' compensation benefits paid to Morrison. Kentucky Central also filed a cross-claim against INA seeking contribution or indemnity for the no-fault benefits paid.

Great American filed a motion for summary judgment against Kentucky Central, arguing that Kentucky Central's right of reimbursement was solely from Morrison, as the payments made by Kentucky Central were not required by the no-fault act because Morrison received workers' compensation benefits. Great American's motion was granted and the order was made final pursuant to CR 54.02. This order is the subject of Kentucky Central's appeal.

Shortly after the entry of this order, Morrison settled with Shamrock.

After Kentucky Central's claim against Great American was dismissed, Kentucky Central filed a third-party complaint against its insured (Morrison) seeking recovery of the no-fault benefits. Kentucky Central filed a motion for summary judgment, asserting that Morrison received a double recovery with his workers' compensation benefits and no-fault benefits. Its motion was granted and the order was made final pursuant to CR 54.02. Morrison appeals from this order. The appeals were consolidated for consideration by this Court. We will first address Morrison's appeal.

The most important issue raised by Morrison concerns the effect of his workers' compensation benefits on his right to BRB. Morrison argues that summary judgment was improper because his net loss was never determined. Kentucky Central asserts in response that calculation of net loss has nothing to do with its right to reimbursement of BRB, and that reimbursement is necessary to avoid a double recovery.

Basic reparation benefits are reimbursement for *net loss*. KRS 304.39–020(2). Net loss is defined in KRS 304.39–020(10) as "loss less benefits or advantages, from sources other than basic or added reparation insurance, required to be subtracted from loss in calculating net loss." Work loss, as well as medical expense, are elements of loss.[1] KRS 304.39–120(1) requires workers' compensation benefits be subtracted from loss in calculating net loss.

The no-fault act places a $200 per week limit on BRB payable for work loss. KRS 304.39–130. This $200 limit is not a limit on loss or net loss, but is a limit on weekly work loss benefits to be paid by the reparation obligor. *United States Fidelity & Guaranty Co. v. Smith*, Ky., 580 S.W.2d 216, 220 (1979); *see also* Uniform Motor Vehicle Accident Reparations Act, Sec. 13, Comment, 14 U.L.A. 81 (1980). Workers' compensation wage benefits should be subtracted from the insured's actual wage loss in calculating net loss. The difference would be the amount the reparation obligor must pay its insured for work loss, subject to the $200 weekly limit. Other jurisdictions have held that workers' compensation benefits should be subtracted from an insured's actual wage loss to determine net loss. *See, e.g., Motley v. State Farm Mutual Insurance Co.*, 502 Pa. 335, 466 A.2d 609 (1983); *Record v. Metropolitan Transit Commission*, Minn., 284 N.W.2d 542 (1979). (We note that Pennsylvania repealed its no-fault act effective October 1, 1984.)

■ The legislature had the prerogative to preclude persons receiving workers' compensation benefits from receiving BRB. It did not do this. The Act is worded so that workers' compensation benefits are deducted from a person's loss. The effect of KRS 304.39–120(1) is to make workers' compensation benefits primary in relation to no-fault benefits. Basic reparation benefits reimburse a person's loss not covered by workers' compensation benefits. *Cf. Affiliated FM Insurance Cos. v. Grange Mutual Casualty Co.*, Ky.App., 641 S.W.2d 49, 51 (1982).

■ Kentucky Central argues that Morrison received a double recovery when he

---

1. Work loss, defined in KRS 304.39–020(5)(b), is "loss of income from work the injured person would probably have performed if he had not been injured, and expenses reasonably incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him."

Medical expense, defined in KRS 304.39–020(5)(a), is "reasonable charges incurred for reasonably needed products, services, and ac-commodations, including those for medical care, physical rehabilitation, rehabilitative occupational training, and other remedial treatment and care. 'Medical expense' may include nonmedical remedial treatment rendered in accordance with a recognized religious method of healing.... Medical expense shall include all healing arts professions licensed by the Commonwealth of Kentucky. There shall be a presumption that any medical bill submitted is reasonable."

received workers' compensation benefits and BRB. It is true that in Kentucky we have a strong policy against a double recovery for the same element of loss. *Hargett v. Dodson*, Ky.App., 597 S.W.2d 151 (1979). However, nothing prevents recovering benefits from separate sources for different elements of loss. *Affiliated FM Insurance Cos.*, 641 S.W.2d at 51. *See also Blue Cross & Blue Shield of Kentucky, Inc. v. Baxter*, Ky.App., 713 S.W.2d 478, 480 (1986). In the instant case Morrison's recovery would be "double" only to the extent that the payments for work loss exceeded his actual work loss.

Kentucky Central also argues that KRS 304.39–210(3) operates to entitle it to reimbursement of all the BRB paid to Morrison. This section provides as follows:

> A claim for basic or added reparation benefits shall be paid without deduction for the benefits which are to be subtracted pursuant to the provisions on calculation of net loss if these benefits have not been paid to the claimant before the reparation benefits are overdue or the claim is paid. The reparation obligor is entitled to reimbursement from the person obligated to make the payments or from the claimant who actually receives the payments.

The purpose of this section is to ensure prompt payment of full benefits to an insured while securing a reparation obligor's right to reimbursement where appropriate. Insofar as the BRB paid to Morrison for work loss exceeded his loss of income minus workers' compensation disability benefits paid, then Kentucky Central is entitled to reimbursement from him.

■ Upon remand, the circuit court should calculate Morrison's net loss to determine his right to BRB. Morrison's workers' compensation wage benefits should be subtracted from his average weekly wage, the difference being BRB work loss benefits Morrison is entitled to, with a weekly maximum of $200. Likewise, the medical benefits received from the compensation carrier should be sub-

tracted from Morrison's actual medical expenses. Any impermissible duplicative payments, resulting in a double recovery for the same medical expenses, should be reimbursed to Kentucky Central. KRS 304.39–210(3). Of course, Kentucky Central is liable only for BRB up to $10,000. KRS 304.39–020(2).

Morrison also appeals the circuit court's award of prejudgment interest. Kentucky Central paid no-fault benefits to Morrison in installments, with the first installment of $631.35 being paid September 17, 1980. The circuit court awarded 12% interest on the entire amount of BRB ($9,957.00) from September 17, 1980.

In Kentucky, it is well-established that prejudgment interest is allowed as a matter of law on a liquidated claim, while interest on an unliquidated claim rests within the discretion of the court. *General Accident Fire & Life Assurance Corp. v. Judd*, Ky., 400 S.W.2d 685 (1966). We believe the circuit court erred in allowing interest on the total amount of BRB from the date of the earliest installment.

■ KRS 304.39–210(3) directs the reparations obligor to pay BRB without deducting workers' compensation benefits if the benefits have not been paid to the claimant before BRB are paid. Morrison was entitled by statute to BRB when they were paid. When Morrison received the workers' compensation benefits reimbursing him for the same element of loss previously paid by BRB, he effected a double recovery. Prejudgment interest should be awarded, if at all, from the dates and to the extent Morrison received a double recovery. *Cf. Alexander Hamilton Life Insurance Co. v. Lewis*, Ky., 550 S.W.2d 558 (1977).

We now turn to Kentucky Central's appeal of the judgment dismissing its subrogation claim against Great American. Kentucky Central argues that its statutory right of subrogation must be allowed by the circuit court. Great American argues that Kentucky Central's admission that its

payments duplicated INA's (the compensation carrier's) payments bars the subrogation claim and that KRS 304.39–210(3) requires Kentucky Central to look to Morrison for reimbursement of BRB. Great American argued in circuit court that Kentucky Central was not obligated to make BRB payments because workers' compensation benefits covered Morrison's net loss.

▮ Our disposition of Morrison's appeal makes clear that Great American's arguments in the circuit court were erroneous. We reject Great American's argument that Kentucky Central's subrogation claim cannot succeed because of Kentucky Central's admission that BRB payments duplicated workers' compensation benefits. Kentucky Central's argument is that it is entitled to subrogation to the extent of BRB.

▮ This issue is one of statutory interpretation. Basic reparation benefits were properly payable to Morrison for his losses not compensated by workers' compensation benefits. KRS 304.39–070 creates a statutory right of subrogation to the extent of BRB. *Grange Mutual Casualty Co. v. McDavid*, Ky., 664 S.W.2d 931 (1984); *Stovall v. Ford*, Ky., 661 S.W.2d 467 (1983). Kentucky Central is the real party in interest with regard to BRB and "the only party who could give the tortfeasor and his insurer a release for elements of damages covered by BRB." *Stovall*, 661 S.W.2d at 467. Morrison's settlement with Shamrock does not defeat the subrogation claim. *Id.; Grange Mutual Insurance Co.*, 664 S.W.2d 931. Kentucky Central should be allowed to pursue its subrogation claim for the amounts of BRB properly payable.

The summary judgments are reversed and this cause is remanded to the circuit court for proceedings consistent with this opinion.

All concur.