HARDAWAY MANAGEMENT
COMPANY, Appellant,

v.

Carole SOUTHERLAND, Appellee.

and

Carole SOUTHERLAND,
Cross–Appellant,

v.

HARDAWAY MANAGEMENT
COMPANY, Cross–
Appellee.

Nos. 97–SC–168–DG, 97–SC–915–DG.

Supreme Court of Kentucky.

Oct. 15, 1998.

Matthew J. Baker, Cole, Moore & Baker, Bowling Green, for Appellant/Cross-Appellee Hardaway Mamagement Company.

Joy D. Denton, Amanda Anderson Young, Harned, Bachert & Denton, Bowling Green, for Appellee/Cross-Appellant Carole Southerland.

COOPER, Justice.

Appellant/Cross–Appellee Hardaway Management Company, Inc., (Hardaway) is headquartered in Tennessee and manages multi-unit apartment complexes in both Tennessee and Kentucky. Appellee/Cross–Appellant Carole J. Southerland had been employed by Hardaway as manager of the Oak Hill Apartments in Morgantown, Kentucky, since December 1, 1984. On October 29, 1988, Southerland injured her back in a work-related accident. She continued to work until November 4, 1988 when her treating physician, Dr. Craig Beard, ordered her to stop. She was removed from payroll status effective November 7, 1988. The notation on the payroll action form placed in Southerland's personnel file reflects the reason for the action as "Leave of absence due to alleged work injury." On December 7, 1988, Hardaway rehired a former maintenance employee, Sandra Carroll, as "assistant manager."

On January 24, 1989, Dr. Beard released Southerland to return to work, but with restrictions against repetitive bending at the waist or lifting more than thirty pounds. However, when Southerland informed Hardaway vice-president Dean Carter by telephone on January 27, 1989 that she was ready to return to work subject to Dr. Beard's restrictions, Carter advised her that her employment was terminated. On that same date, a payroll action form was placed in Southerland's personnel file indicating the reason for her termination as "Lack of work—services not needed;" and a letter was sent to Southerland giving her written notification of her termination and stating that she was being terminated for "lack of work."

Also on January 27, 1989, a payroll action form was placed in Sandra Carroll's personnel file promoting her from assistant manager to manager, effective January 30, 1989.

Because Southerland's injury was work-related, she was paid temporary total disability benefits under the Kentucky Workers' Compensation Act of $146.66 per week for the periods November 4, 1988 through February 16, 1989, and March 19, 1989 through January 6, 1990. On September 28, 1990, she settled the remainder of her workers' compensation claim for a lump sum payment of $15,000.00, representing a permanent partial disability rating of 28.5%.

On August 30, 1991, Southerland sued Hardaway in the United States District Court for the Western District of Kentucky, asserting three causes of action: (1) Wrongful termination in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.;* (2) retaliatory discharge in violation of Kentucky's Workers' Compensation Act, KRS 342.197; and (3) wrongful termination in violation of the Kentucky Equal Opportunities Act (KEOA), KRS 207 .150.[1] Hardaway was granted summary judgment on the Rehabilitation Act claim on grounds of limitations, and on the retaliatory discharge claim on grounds of insufficiency of the evidence. Summary judgment was denied with respect to the KEOA claim. The district court then declined to exercise supplemental jurisdiction over that claim and dismissed it without prejudice on October 18, 1993. All of these rulings were affirmed by the Sixth Circuit Court of Appeals. *Southerland v. Hardaway Management Company, Inc.,* 41 F.3d 250 (6th Cir.1994).

Meanwhile, on January 7, 1994, Southerland filed this action for compensatory and punitive damages for violation of the KEOA. Following a jury trial in the Butler Circuit Court, she was awarded compensatory damages for "back pay or income lost" in the sum of $81,374.00 and punitive damages in the sum of $25,000.00. Pursuant to KRS

---

1. (1) No employer shall fail or refuse to hire, discharge or discriminate against any individual with a disability with respect to wages, rates of pay, hours, or other terms and conditions of employment because of the person's physical disability unless the disability restricts that individual's ability to engage in the particular job or occupation for which he or she is eligible, or unless otherwise provided by law....

207.230(1), the trial judge also awarded her attorney fees and costs in the sum of $44,-192.17. The Court of Appeals reversed the award of punitive damages, but affirmed the awards for compensatory damages, attorney fees and costs. We granted Hardaway's motion for discretionary review of the compensatory damage award and Southerland's cross-motion for discretionary review of the Court of Appeals' reversal of her punitive damages award.

## I. CIRCUIT COURT JURISDICTION.

Southerland brought this action in the Butler Circuit Court pursuant to KRS 207.230, which provides *inter alia* as follows:

**207.230. Citizen suits.**

Notwithstanding the provisions of KRS 207.200 [procedures for enforcement by Department of Workplace Standards] and KRS 207.210 [administrative complaint procedures], citizen suits may be commenced under the following terms and conditions:

(1) Any person deeming himself injured by any act in violation of the provisions of this chapter shall have a civil cause of action *in Circuit Court* to enjoin further violations, and to recover the actual damages sustained by him, and upon judicial finding of any violation of KRS 207.150 to 207.190, shall recover the costs of the law suit, including a reasonable fee for his attorney of record, all of which shall be in addition to any other remedies contained in KRS 207.130 to 207.240. (Emphasis added.)

This provision was enacted along with KRS 207.150 as part of the original KEOA in 1976. 1976 Ky. Acts, ch. 280, § 12. Hardaway posits that KRS 207.230(1) was either superseded or repealed by implication by the 1990 enactment of KRS 207.260, which provides as follows:

**207.260. Right of action—Recovery for each violation.**

(1) Any person aggrieved by a violation of KRS 207.135, 207.150, 207.160, or 304.12–013 shall have a right of action *in District Court* and may recover for each violation:

(a) Against any person who violates a provision of this section, liquidated damages of one thousand dollars ($1,000) or actual damages, whichever is greater.

(b) Against any person who intentionally or recklessly violates a provision of this section, liquidated damages of five thousand dollars ($5,000) or actual damages, whichever is greater.

(c) Reasonable attorney's fees.

(d) Such other relief, including an injunction, as the court shall deem appropriate.

(2) Nothing in this section limits the right of the person aggrieved by a violation of this section to recover damages or other relief under any other applicable law. (Emphasis added.)

Hardaway cites *Strader v. Commonwealth*, 302 Ky. 330, 194 S.W.2d 368 (1946) for the proposition that in the event of a conflict between two statutes, the last statute enacted must prevail. However, it is also a maxim of statutory construction that "Repeal by implication is not favored and will not be upheld unless such an intention clearly appears or unless the repugnancy is so clear as to admit of no other reasonable construction." *City of Eddyville v. City of Kuttawa*, Ky., 343 S.W.2d 404, 406 (1961); *see also Demunbrun v. Browning*, 311 Ky. 71, 223 S.W.2d 372 (1949). Hardaway's argument fails for two reasons. First, KRS 207.260(2) clearly provides that the provisions of that statute do not preclude an aggrieved person from recovering damages or relief under any other applicable law, which presumably would include KRS 207.230(1). Otherwise, that person's right to recover damages would be restricted to the jurisdictional limits of the district court, KRS 24A.120(1), regardless of his or her actual damages. Second, KRS 446.130 instructs that in construing statutes which contain an apparent conflict, reference may be had to the acts of the General Assembly from which the sections were derived. KRS 207.260 was enacted as section 51 of chapter 443 of the 1990 Kentucky Acts. Chapter 443 was entitled "An Act relating to acquired immunodeficiency syndrome." Section 1 of that chapter, now codified as KRS 214.600, contains a lengthy statement of legislative intent, which includes the following:

The General Assembly finds the unique methods of transmission of this disease, and its inevitably fatal course, have raised public fears; changed the attitudes of employers, insurers, educators, law enforcement personnel, and health and medical providers about dealing with the disease; and could unexpectedly raise the medical costs of this state. The General Assembly intends to establish programs and requirements related to acquired immunodeficiency syndrome which carefully balance medical necessity, the right to privacy, and protection of the public from harm and which establish public programs for the care and treatment of persons with acquired immunodeficiency syndrome and related conditions.

Chapter 443 of the 1990 Kentucky Acts consisted of sixty-five (65) sections relating to acquired immunodeficiency syndrome (AIDS). Section 51 was codified as KRS 207.260. Section 52 amended KRS 207.150 to proscribe employment discrimination on the basis of the results of a human immunodeficiency virus-related test, subject to certain exceptions. Subsection (1) of section 51 provided that "Any person aggrieved by a violation of Sections 49, 52, 53 or 54 of this Act shall have a right of action in District Court...." From this legislative history, it is clear that KRS 207.260 was enacted to provide relief for persons discriminated against for AIDS-related reasons and not to repeal or otherwise affect the existing right of action created by KRS 207.230. The Butler Circuit Court was the appropriate jurisdiction in which to bring this action.

## II. NOTICE TO COMMISSIONER OF WORKPLACE STANDARDS.

■ Hardaway next asserts that Southerland was precluded from bringing this action because she did so without first notifying the commissioner of workplace standards of the alleged violation of KRS 207.150. KRS 207.230(2) provides *inter alia* as follows:

(2) Notice. No action may be commenced:

(a) Prior to thirty (30) days after the plaintiff has given notice of the violation to the commissioner of workplace standards.

(b) If the commissioner of workplace standards has commenced and is diligently prosecuting a civil action to require compliance with KRS 207.130 to 207.240; however, the aforementioned conditions do not prohibit citizen-initiated civil enforcement action contemporaneously with criminal enforcement efforts by the state.

This section of the statute must be read in conjunction with KRS 207.200 and KRS 207.210, which empower the Department of Workplace Standards to investigate complaints made by aggrieved persons and issue "cease and desist" orders in the event the allegations are verified. KRS 207.230(2) obviously applies to that portion of KRS 207.230(1) which permits citizen suits "to enjoin further violations," not that portion which permits citizen suits for "actual damages sustained by him." It is logical that the employer should not be required to defend against injunctive relief on two fronts, one administrative and the other judicial. However, there is no logic in requiring an aggrieved person who seeks only personal damages and not injunctive relief to notify the commissioner of workplace standards before filing a suit for damages. The commissioner has no authority to proceed against the employer for the aggrieved person's damages, so there is no administrative remedy to exhaust in that respect. Furthermore, the statute does not require that notice be given to the commissioner of workplace standards. It only requires that if such notice is given, a civil action may not be initiated prior to thirty days thereafter. *Day v. Alcan Aluminum Corporation*, 675 F.Supp. 1508 (W.D.Ky.1987).

## III. LAW OF THE CASE.

■ In affirming the district court's dismissal of Southerland's claim of retaliatory discharge under KRS 342.197(1), the Sixth Circuit Court of Appeals made the following observation:

We agree with the district court that Ms. Southerland's documentary and deposition evidence do not establish the elements of a retaliation claim. There is no indication that any intent to pursue a

workers' compensation claim existed at the time of the plaintiff's discharge, or that such a course of action was discussed. To the contrary, she was seeking an immediate return to her previous job as manager, claiming that she was able to perform all the required duties of the job. Only after she was denied reinstatement did the plaintiff turn to the Workers' Compensation Act for relief. The fact remains that Ms. Southerland was injured while performing work that she later claimed was not required by her position. *We believe the evidence supports the defendant's assertion that the plaintiff was discharged solely because of her inability to perform her job.*

*Southerland v. Hardaway Management Co., Inc., supra,* 41 F.3d at 256 (emphasis added). Hardaway claims that the emphasized language in this paragraph is the "law of the case" and precludes us from affirming the judgment entered on Southerland's KEOA claim. The law of the case doctrine "is a rule under which an appellate court, on a subsequent appeal, is bound by a prior decision on a former appeal in the same court and applies to the determination of questions of law and not questions of fact." *Inman v. Inman,* Ky ., 648 S.W.2d 847, 849 (1982). It has no application here, since the Supreme Court of Kentucky and the Sixth Circuit Court of Appeals are not the same court.

The Court of Appeals (of Kentucky) assumed that Hardaway was actually claiming that Southerland's KEOA claim was barred by collateral estoppel or issue preclusion, a doubtful assumption since Hardaway did not plead either as an affirmative defense, CR 8.03, *Whittenberg Engineering & Const. Co. v. Liberty Mutual Ins. Co.,* Ky., 390 S.W.2d 877, 883 (1965), and continues to assert its "law of the case" theory on discretionary review. Nevertheless, the Court of Appeals was correct in its conclusion that collateral estoppel was equally unavailable as a defense, since the Sixth Circuit Court of Appeals did not rule on the merits of Southerland's KEOA claim and was not even discussing that claim when it made the observation in question. *Compare Moore v. Commonwealth, Cabinet for Hu-*

*man Resources,* Ky., 954 S.W.2d 317, 319 (1997).

## IV. SUFFICIENCY OF THE EVIDENCE.

The central issue in this case has always been whether Southerland was terminated by Hardaway in violation of the KEOA; for otherwise, she was terminable at will and had no cause of action for wrongful discharge. *Production Oil Co. v. Johnson,* Ky., 313 S.W.2d 411 (1958); *Scroghan v. Kraftco Corp.,* Ky.App., 551 S.W.2d 811 (1977); *cf. Firestone Textile Co. Div. v. Meadows,* Ky ., 666 S.W.2d 730, 731 (1983). The operative language of KRS 207.150(1) is that which provides that an employer cannot discriminate against a person because of a disability "unless the disability restricts that individual's ability to engage in the particular job or occupation for which he or she is eligible."

■ Hardaway contends that Southerland's job required her to move equipment and furniture, including stoves and refrigerators, dig ditches, suction water out of flooded apartments, trim trees and bushes, plant flowers, sweep, mop and clean the laundry room, paint and wallpaper walls, install carpet, clean windows, remove storm windows, scrub tile floors on her hands and knees, and mow grass. Southerland acknowledged that she did, indeed, occasionally perform all of these functions on a voluntary basis prior to her injury. However, she steadfastly claimed and the jury obviously believed that these duties were not requirements of her job as apartment manager. In support of her claim, Southerland introduced into evidence a written job description prepared and furnished to her by Hardaway, which describes her duties as manager in great detail, but does not include any of the tasks described above. A fair reading of the job description indicates that the manager's job was to supervise and inspect others who actually performed those tasks. Southerland also produced two other former Hardaway apartment managers who testified that they were never required to and never did perform the tasks in question. In short, Southerland introduced evidence that although she performed the additional tasks on a volunteer

basis, they were not within her job description; and although she could no longer perform those additional tasks after her injury, she could perform the tasks set forth in the job description. This evidence sufficed to avoid a directed verdict. *Lovins v. Napier,* Ky., 814 S.W.2d 921, 922 (1991). It also sufficed to satisfy the "cold hard facts" test set forth in *Harker v. Federal Land Bank of Louisville,* Ky, 679 S.W.2d 226 (1984), although *Harker* specifically limited that test "as a special rule for age discrimination summary judgments." *Id.* at 229.

## V. EVIDENCE OF HARDAWAY'S FINANCIAL CONDITION.

■ It has been the law of this Commonwealth for almost one hundred years that in an action for punitive damages, the parties may not present evidence or otherwise advise the jury of the financial condition of either side of the litigation.[2] *Hensley v. Paul Miller Ford,* Ky., 508 S.W.2d 759, 764 (1974); *Givens v. Berkley,* 108 Ky. 236, 56 S.W. 158 (1900). The same rule applies in cases where punitive damages are not sought.[3] *Dawson v. Shannon,* 225 Ky. 635, 9 S.W.2d 998 (1928). Although Southerland attempted to introduce evidence of Hardaway's financial condition at trial, she was precluded from doing so when Hardaway's objection to the introduction of a financial statement was sustained and the witness professed to have no knowledge as to whether Hardaway had made a profit the previous year. The only evidence introduced along this line was that Hardaway managed over 8,000 apartment units. Although this information was only marginally relevant to the issues in this case, we agree with the Court of Appeals that the introduction of this evidence did not affect Hardaway's substantial rights. CR 61.01. The jury already knew that Hardaway was engaged in the business of apartment management on a multi-state

basis, and there was no mention of this information during closing arguments.

## VI. PUNITIVE DAMAGES.

■ The instruction on punitive damages was premised solely on Southerland's claim that Hardaway's notation on the January 27, 1989 payroll action form that her termination was due to "Lack of work—services not needed" and the property manager's letter to her on that date that she was being terminated due to "lack of work" amounted to clear and convincing evidence of fraud.[4] KRS 411.184(2). Subsection (1)(c) of that statute defines fraud as "an intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff." Southerland's theory is that the assertion that she was terminated for lack of work and that her services were not needed was false. Hardaway argues that the assertion was technically true, because it had already hired a replacement (Carroll) and did not need Southerland's services if she could not perform what Hardaway contended were the duties of her job. Regardless, we agree with the Court of Appeals that even if the assertion was false, it did not rise to the level of actionable fraud.

Southerland received verbal notification of her termination during her telephone conversation with Dean Carter on January 27, 1989. The payroll action form and the letter were both dated that same day, but must have been prepared after the telephone conversation. Southerland posits that the false statements were intended to cover up Hardaway's actual and wrongful reason for terminating her employment, *i.e.,* in violation of the KEOA. The Court of Appeals found that these bare statements, even though subsequently determined by the jury to be false, did not constitute clear and convincing evi-

---

**2.** The majority of jurisdictions hold otherwise. 25 C.J.S. *Damages* § 126(3), p. 1168 (1966). This common law rule was not affected by the enactment of KRS 411.186, though subsection (2)(c) of that statute would permit evidence of the extent to which the defendant *profited from the wrongful act, itself.*

**3.** The majority of jurisdictions are in accord. 25 C.J.S. *Damages* § 71, p. 840 (1966).

**4.** Southerland also argues that Hardaway in fact terminated her on November 7, 1988, but the payroll action form placed in her personnel file effective that date clearly states "Leave of absence due to alleged work injury."

dence of an intent to injure Southerland. We agree.

This type of fraudulent concealment is actionable only if the concealment itself caused damages independent of those flowing from the wrongful act attempted to be concealed. *Simcuski v. Saeli,* 44 N.Y.2d 442, 406 N.Y.S.2d 259, 377 N.E.2d 713 (1978); *Owen v. Appelbaum,* 205 A.D.2d 976, 613 N.Y.S.2d 504 (N.Y.App.Div.1994); *Howe v. Ampil,* 185 A.D.2d 520, 585 N.Y.S.2d 869 (N.Y.App.Div. 1992). The cited cases were all actions for medical malpractice. In each case, the defendant physician was accused of attempting to conceal his negligence from the plaintiff patient. In each case the inquiry was whether the concealment resulted in damages separate and distinct from those flowing from the malpractice. If so, the fraud was actionable; but if not, there was no cause of action. Thus, in *Simcuski,* the fact that the fraudulent concealment prevented the patient from obtaining a cure of the condition caused by the alleged malpractice supported the separate cause of action for fraud. Likewise, in *Howe,* the doctor's failure to advise the patient of his false diagnosis of cancer resulted in additional emotional distress. But in *Owen,* there was no separate cause of action for fraud, because all of the patient's actual damages resulted from the malpractice and none resulted from the concealment. *See also, Detwiler v. Bristol–Myers Squibb Co.,* 884 F.Supp. 117 (S.D.N.Y.1995); *Otero v. Presbyterian Hospital,* 240 A.D.2d 279, 658 N.Y.S.2d 624 (N.Y.App.Div.1997); *Spinosa v. Weinstein,* 168 A.D.2d 32, 571 N.Y.S.2d 747, 753 (N.Y.App.Div.1991); *Coopersmith v. Gold,* 172 A.D.2d 982, 568 N.Y.S.2d 250, 252 (N.Y.App.Div.1991); *Harkin v. Culleton,* 156 A.D.2d 19, 554 N.Y.S.2d 478, 481 (1990), *appeal dismissed,* 76 N.Y.2d 936, 563 N.Y.S.2d 64, 564 N.E.2d 674 (1990).

In *Bierman v. Klapheke,* Ky., 967 S.W.2d 16 (1998), we upheld a judgment for punitive damages based upon fraudulent concealment of legal malpractice because the concealment exacerbated the damages suffered by the client, thus establishing "a claim for punitive damages clearly independent from his acts of negligence." *Id.* at 20.

■ These cases are consistent with the general rule that fraud is actionable only if it results in damage to the complainant, *Graham v. John R. Watts & Son,* 238 Ky. 96, 36 S.W.2d 859 (1931), 37 C.J.S. *Fraud* §§ 50, 51 (1997), and that there can be no recovery where the fraud fails of its intended effect. 37 C.J.S. *Fraud* § 51 (1997). Southerland did not sustain any separate and distinct damages as a result Hardaway's alleged attempt to conceal the real reason for her termination; and if the assertions contained in the January 27, 1989 payroll action form and letter were intended to prevent Southerland from recovering damages for her wrongful discharge, they failed in their intended effect. Thus, the Court of Appeals correctly set aside the award of punitive damages.

## VII. WORKERS' COMPENSATION ISSUES.

*1. Exclusive remedy.*

■ Hardaway claims this action is precluded by the exclusive remedy provision of the Workers' Compensation Act. KRS 342.690(1). We addressed this issue in *Meyers v. Chapman Printing Co, Inc.,* Ky., 840 S.W.2d 814, 817–19 (1992) in the context of a civil rights claim brought under KRS 344.450, a statute with language almost identical to that of KRS 207.230(1). We held in *Meyers:*

> [T]he workers' compensation statute preempts only common law tort claims and does not preempt a statutory civil rights claim. This Court must presume that the General Assembly knew of the Workers' Compensation Law preemption doctrine when it created a private cause of action for "actual damages" caused by discrimination in the Kentucky Civil Rights Act, and that it intended to create an independent cause of action notwithstanding that the two statutes might provide alternative sources of statutory relief in those cases where the mental emotional injury inflicted causes work-related occupational disability.

*Id.* at 819. We continue to adhere to that view and find it equally applicable to an action brought under the KEOA claiming employment discrimination on the basis of disability.

## 2. Credit.

Next, Hardaway claims it should be allowed a credit against the judgment for the amount of workers' compensation benefits paid to Southerland. Southerland's expert, Steve Wheeler, calculated her lost income on the basis of the salary and benefits she would have received but for the wrongful termination of her employment. His calculations included the period November 4, 1988 through October 4, 1995, which totaled $81,-374.00, the exact amount awarded by the jury. (Wheeler also submitted calculations of future lost earnings after October 4, 1995 through 2003, but the jury awarded Southerland nothing for that item of damages.) Wheeler calculated Southerland's income and benefits from her employment by Hardaway at $13,633.00 per year, or $262.17 per week. His calculations included fifty-seven (57) weeks during which Southerland was drawing temporary total disability workers' compensation benefits, *i.e.*, a period during which she admittedly could not have worked. Hardaway claims it is entitled to a credit against the judgment for the amount of workers' compensation benefits paid during that period. The Court of Appeals misconstrued this issue as being akin to a subrogation claim under KRS 342.700(1) and held that such a claim was derivative and could not be maintained as an independent cause of action by the employer. *See Zurich American Ins. Co. v. Haile,* Ky., 882 S.W.2d 681 (1994); *Fireman's Fund Ins. Co. v. Government Employees Ins. Co.,* Ky., 635 S.W.2d 475, 476 (1982), *overruled on other grounds, Perkins v. Northeastern Log Homes,* Ky., 808 S.W.2d 809 (1991). In fact, the issue is not one of subrogation, but whether Southerland can recover both workers' compensation and back pay from her employer during a period in which she was totally disabled.

■■■ There is a strong public policy in this Commonwealth against double recovery for the same elements of loss. *Morrison v. Kentucky Central Ins. Co.,* Ky.App., 731 S.W.2d 822, 825 (1987). An exception, of course, is the collateral source rule that "damages recoverable for a wrong are not diminished by the fact that the injured party has been wholly or partly indemnified by insurance (*to whose procurement the wrongdoer did not contribute* )." *Taylor v. Jennison,* Ky., 335 S.W.2d 902, 903 (1960) (emphasis added); *see also, Burke Enterprises, Inc. v. Mitchell,* Ky., 700 S.W.2d 789 (1985). The logic behind this rule is that there is no reason why a wrongdoer should receive the benefit of insurance obtained by the injured party for his own protection. *Taylor v. Jennison, supra,* at 903. Of course, that logic does not apply here, where the wrongdoer, Hardaway, also obtained the insurance which paid the workers' compensation benefits to Southerland.

■■■ Although this is an issue of first impression in this jurisdiction, it is one which has been fully litigated in the federal system. The two-pronged rule developed by the federal courts is that (1) the employer is not liable for back pay for periods during which the employee is unavailable for work due to disability, *N.L.R.B. v. Louton, Inc.,* 822 F.2d 412, 415 (3d Cir.1987), *citing Canova v. N.L.R.B.,* 708 F.2d 1498 (9th Cir.1983) and *American Manufacturing Co.,* 167 N.L.R.B. 520 (1967); and (2) workers' compensation benefits which represent compensation for lost wages may be deducted from a back pay award, but those which represent reparation for permanent physical injury are not deductible, *Canova v. N.L.R.B., supra,* at 1504, *citing American Manufacturing Co., supra,* at 523. *See Aguinaga v. United Food and Comm'l Workers Int'l Union,* 720 F.Supp. 862, 876 (D.Kan.1989), *aff'd in part and rev'd and remanded in part on other grounds,* 993 F.2d 1463 (10th Cir.1993), *cert. denied,* 510 U.S. 1072, 114 S.Ct. 880, 127 L.Ed.2d 75 (1994). We need not consider the first aspect of this rule, for that issue was not raised in this case. As for the second aspect, workers' compensation benefits in Kentucky are not intended as damages for injuries, but as compensation for wages lost or anticipated to be lost in the future. *Princess Coals, Inc. v. Stapleton,* Ky., 435 S.W.2d 62 (1968); *National Distillers Products Corp. v. Jones,* 309 Ky. 394, 217 S.W.2d 813 (1949); *Mary Helen Coal Corp. v. Dusina,* 308 Ky. 658, 215 S.W.2d 563 (1948); *Warner v. Lexington Roller Mills,* 306 Ky. 142, 206 S.W.2d 471 (1947). We find the logic of the federal

authorities to be persuasive. Hardaway was entitled to credit against Southerland's judgment for the temporary total disability benefits paid to her while she was unable to work. Those benefits represented compensation for wages lost during an identical period for which the jury awarded her damages for "back pay and income lost."

However, the same reasoning does not apply to the lump sum settlement of Southerland's permanent partial disability claim. A worker can be entitled to permanent partial disability benefits even if he or she has sustained no immediate loss of earnings, but has sustained an impairment of future earning capacity. *Armco Steel Corp. v. Mullins,* Ky., 501 S.W.2d 261 (1973); *Osborne v. Johnson,* Ky., 432 S.W.2d 800 (1968). The jury did not award Southerland damages for future lost earnings. Furthermore, she would have been paid her lump sum settlement for permanent partial disability even if she had returned to work full time for Hardaway. *Armco Steel Corp. v. Mullins, supra.* Thus, there was no double recovery or duplication of benefits with respect to that aspect of her workers' compensation claim.

Accordingly, the decision of the Court of Appeals is reversed insofar as it denied Hardaway credit for workers' compensation benefits paid to Southerland for temporary total disability during the periods when she was unable to work, and this action is remanded to the Butler Circuit Court with directions to calculate the amount of workers' compensation temporary total disability benefits paid to Southerland during the period 1988 through 1990 and deduct that amount from the judgment before awarding interest and penalty. In all other respects, the decision of the Court of Appeals is affirmed.

LAMBERT, C.J., GRAVES, JOHNSTONE, STEPHENS and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion.

STUMBO, Justice, dissenting.

Respectfully, I dissent from the majority treatment of the issue of punitive damages. A review of the evidence presented in support of the claim for punitive damages clearly shows that there was sufficient evidence to support the jury's award. The vice president of Hardaway Group, Inc., testified that, according to the personnel records, Southerland was actually terminated just ten days after her October 29, 1988, work-related injury because of that injury. However those same records also indicate that more than two months later, she was again terminated because of "lack of work-services not needed." That record was completely at odds with the fact that the position Southerland held was filled only days later by the promotion of a co-worker. Yet another Hardaway witness testified in a pre-trial deposition that Southerland was discharged because of the medical restrictions placed upon her due to her injuries. The same witness testified at trial that Southerland was terminated for poor job performance. No attempt was made at trial to reconcile these four conflicting versions of the reasons for her discharge.

In my opinion, Southerland presented clear and convincing evidence that the various reasons set forth for her discharge were attempts by Hardaway to cover up the real reason for her discharge. "Fraud means an intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff." KRS 411.184(1)(b). The jury was properly instructed and had sufficient evidence to conclude that Hardaway either intentionally misrepresented or concealed the true reason for Southerland's discharge so as to cause her injury. I would reinstate the jury's verdict and award of punitive damages.